UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

NICOLE HANSON,

                Plaintiff,

v.                                    3:15-CV-0150
                                    (GTS/WBC)

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____

APPEARANCES:                        OF COUNSEL:

LACHMAN, GORTON LAW FIRM        PETER A. GORTON, ESQ.
  Counsel for Plaintiff
1500 E. Main St.
P.O. Box 89
Endicott, NY 13761-0089

U.S. SOCIAL SECURITY ADMIN.         LAUREN E. MYERS, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

William B. Mitchell Carter, U.S. Magistrate Judge,

## <u>REPORT and RECOMMENDATION</u>

This matter was referred for report and recommendation by the Honorable Judge

Suddaby, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local

Rule 72.3(d).  (Dkt. No. 21.)  This case has proceeded in accordance with General

Order 18.

Currently before the Court, in this Social Security action filed by Nicole Hanson

("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the

Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-

motions for judgment on the pleadings.  (Dkt. Nos. 13, 17, 20.)  For the reasons set forth below, it is recommended that Plaintiff's motion be granted in part, in the extent it seeks remand under Sentence Four of 42 U.S.C. § 405(g), and denied in part, and Defendant's motion be granted in part and denied in part.

## I.    RELEVANT BACKGROUND

### A.    Factual Background

Plaintiff was born on February 23, 1976.  (T. 85.)  She completed high school. (T. 206.)  Generally, Plaintiff's alleged disability consists of rheumatoid arthritis ("RA"), depression, and total hip replacement.  (T. 205.)  Her alleged disability onset date is January 1, 2012. (T. 85.)  Her date last insured is June 30, 2017.  (T. 14.)[1]  She previously worked as a server.  (T. 206.)

### B.    Procedural History

On May 21, 2012, Plaintiff applied for a period of Disability Insurance Benefits ("SSD") under Title II, and Supplemental Security Income ("SSI") under Title XVI, of the Social Security Act.  Plaintiff's applications were initially denied, after which she timely requested a hearing before an Administrative Law Judge ("the ALJ"). On September 26, 2013, Plaintiff appeared before the ALJ, F. Patrick Flanagan.  (T. 27-76.)  On December 20, 2013, ALJ Flanagan issued a written decision finding Plaintiff not disabled under the Social Security Act.  (T. 9-26.)  On January 8, 2015, the Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner.  (T. 1-6.)  Thereafter, Plaintiff timely sought judicial review in this Court.

### C.    The ALJ's Decision

---

[1]    Elsewhere in the record Plaintiff's date last insured was listed as December 31, 2016.  (T. 85.)  Neither party contests the date last insured determined by the ALJ.

Generally, in his decision, the ALJ made the following five findings of fact and conclusions of law.  (T. 14-22.)  First, the ALJ found that Plaintiff met the insured status requirements through June 30, 2017 and Plaintiff had not engaged in substantial gainful activity since January 1, 2012.  (T. 14.)  Second, the ALJ found that Plaintiff had the severe impairments of RA, degenerative disc disease of the cervical spine, osteoarthritis of the feet, and avascular necrosis of the left hip status post total hip replacement.  (*Id.*)  The ALJ determined that Plaintiff's obesity, visual impairments, and mental impairments were non-severe impairments.  (T. 15-16.)  Third, the ALJ found that Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1.  (T. 16-17.)  Fourth, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work.  (T. 17.)  The ALJ determined Plaintiff could:

> "[o]ccasionally lift/carry ten pounds and nominal weights frequently, stand and walk for two hours out of an eight hour workday, sit for six hours out of an eight hour workday, and occasionally use both upper extremities for reaching, handling, fingering and feeling.  [Plaintiff] has no other exertional or non-exertional limitations."

(*Id.*)  Fifth, the ALJ determined that Plaintiff was incapable of performing her past relevant work; however, there were jobs that existed in significant numbers in the national economy Plaintiff could perform.  (T. 20-21.)

## II.     THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A.     Plaintiff's Arguments

Plaintiff makes four separate arguments in support of her motion for judgment on the pleadings.  First, Plaintiff argues the ALJ erred in failing to take into account Plaintiff's severe emotional conditions.  (Dkt. No. 13 at 7-9 [Pl.'s Mem. of Law].)

Second, Plaintiff argues the ALJ's credibility findings were erroneous. (*Id.* at 9-11.)

Third, Plaintiff argues the ALJ improperly weighed the medical evidence. (*Id.* at 11-18.)

Fourth, and lastly, Plaintiff argues the ALJ erred in finding that Defendant satisfied the

step five burden. (*Id.* at 18-19.)

### B. Defendant's Arguments

In response, Defendant makes four arguments. First, Defendant argues that the

ALJ correctly determined Plaintiff's severe impairments. (Dkt. No. 17 at 5-8 [Def.'s

Mem. of Law].) Second, Defendant argues the ALJ's RFC determination was supported

by substantial evidence. (*Id.* at 8-17.) Third, Defendant argues the ALJ properly

determined, at step five, that jobs existed in significant numbers in the national economy

that Plaintiff could perform. (*Id.* at 17-18.) Fourth, and lastly, Defendant argues that

remand for calculation of benefits is not warranted. (*Id.* at 18-19.)

### C. Plaintiff's Reply Brief

Plaintiff also filed a reply brief. (Dkt. No. 20 [Pl.'s Reply].) Plaintiff essentially

argues that Defendant's arguments should be rejected because each argument was

simply a *post hoc* rationalization of the ALJ's determinations. (*Id.* at 1-4.)

## III. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine de novo

whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v.*

*Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the

Commissioner's determination will only be reversed if the correct legal standards were

not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*,

817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner],

even if it might justifiably have reached a different result upon a de novo review."

*Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

## B.     Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The Supreme Court has recognized the validity of this sequential evaluation process.  *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987).  The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.  Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.  Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982).

## IV.     ANALYSIS

## A.     The ALJ's Step Two Determination

At step two of the sequential evaluation process, the ALJ must determine whether Plaintiff had a severe impairment that significantly limited her physical or

mental ability to do basic work activities. *See* C.F.R. §§ 404.1520(c), 416.920(c). The plaintiff bears the burden of presenting evidence establishing severity. *Taylor v. Astrue*, 32 F. Supp. 3d 253, 265 (N.D.N.Y. 2012) (citing *Miller v. Comm'r of Social Sec.,* No. 05-CV-1371, 2008 WL 2783418, at *6-7 (N.D.N.Y. July 16, 2008); *see also* 20 C.F.R. §§ 404.1512(a), 416.912(a). Although the Second Circuit has held that this step is limited to "screen[ing] out de minimis claims," *Dixon v. Shalala,* 54 F.3d 1019, 1030 (2d Cir.1995), the "mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment" is not, by itself, sufficient to render a condition "severe." *Coleman v. Shalala,* 895 F.Supp. 50, 53 (S.D.N.Y. 1995). Indeed, a "finding of 'not severe' should be made if the medical evidence establishes only a 'slight abnormality' which would have 'no more than a minimal effect on an individual's ability to work.'" *Rosario v. Apfel,* No. 97-CV-5759, 1999 WL 294727, at *5 (E.D.N.Y. March 19,1999) (quoting *Bowen v. Yuckert,* 482 U.S. 137, 154 n.12, 107 S.Ct. 2287 (1987)).

In addition, "[w]here an ALJ has omitted an impairment from step two of the sequential analysis, other courts have declined to remand if the ALJ clearly considered the effects of the impairment in the remainder of his analysis." *Chavis v. Astrue*, No. 07-CV-0018, 2010 WL 624039, at *12 (N.D.N.Y. Feb.18, 2010); *Lasiege v. Colvin*, No. 12-CV-01398, 2014 WL 1269380, at *10-11 (N.D.N.Y. Mar. 25, 2014); *Reices-Colon v. Astrue*, 523 F. App'x 796, 798 (2d Cir. 2013) (finding the alleged step two error harmless because the ALJ considered the plaintiff's impairments during subsequent steps); *see also* 20 C.F.R. §§ 404.1523, 416.923 (stating that the ALJ is required to consider the "combined effect of all of [plaintiff's] impairments without regard to whether

any such impairment, if considered separately would be of sufficient severity"). It has been well established that "[b]ecause step two merely serves as a filter to screen out *de minimis* disability claims, a finding of any severe impairment, whether attributable to a single condition or a combination of conditions, is enough to satisfy its requirements." *Kessler v. Colvin*, 48 F. Supp. 3d 578, 593 (S.D.N.Y. 2014) (citing *Fortier v. Astrue*, No. 10-CV-01688, 2012 WL 3727178, at *9 (D. Conn. May 11, 2012)).

At step two the ALJ determined that Plaintiff had the severe impairments of RA, degenerative disc disease of the cervical spine, osteoarthritis of the feet, and avascular necrosis of the left hip status post total hip replacement. (T. 14.) The ALJ determined Plaintiff's obesity, vision impairment, and mental impairments were non-severe impairments. (T. 15.)

Plaintiff argues the ALJ erred in his determination that Plaintiff's mental impairments were non-severe impairments. (Dkt. No. 13 at 7-9 [Pl.'s Mem. of Law].) Here, any error in classifying Plaintiff's mental impairments as non-severe was harmless error because the ALJ found other impairments to be severe at step two and the ALJ explicitly considered Plaintiff's mental impairments in his RFC analysis.[2]

Although the ALJ determined Plaintiff's mental impairments were non-severe, the ALJ thoroughly discussed Plaintiff's mental impairments in his RFC analysis. (T. 18, 20.) At the subsequent steps of the evaluation process, the ALJ discussed Plaintiff's testimony regarding the alleged limitations imposed by her mental impairments. (T. 18.)

---

[2]    As Plaintiff accurately points out in her Reply Brief, "[t]he law is that the ALJ's omission to find a severe condition is only allowed if the continued sequential evaluation considers the limitations from the severe condition in the ALJ's RFC." (Dkt. No. 20 at 3 [Pl.'s Reply].); see *Lasiege v. Colvin*, No. 7:12-CV-1398, 2014 WL 1269380, at *11 (N.D.N.Y. Mar. 25, 2014) ("even if the ALJ erred in failing to find Plaintiff's headaches to be a severe impairment, such an error would be harmless" because the ALJ explicitly noted plaintiff's headaches in his RFC determination).

The ALJ then proceeded to accurately summarized, and assign weight to, the opinions of the consultative examiner and the non-examining State agency medical examiner regarding Plaintiff's mental impairments. (T. 20.) The ALJ clearly considered Plaintiff's mental impairments in formulating his RFC determination; therefore, any error at step two was harmless.

### B.    The ALJ's RFC Determination

A plaintiff's RFC "is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." *Cichocki v. Astrue*, 729 F.3d 172, 176 (2d Cir. 2013) (citing SSR 96–8p, 1996 WL 374184, at *1 (July 2, 1996)). In making an RFC determination, the ALJ will base his determination on "all the relevant evidence" in a plaintiff's case record. 20 C.F.R. §§ 404.1545(a), 416.945(a).

The relevant factors considered in determining what weight to afford a medical opinion include the length, nature and extent of the treatment relationship, relevant evidence which supports the opinion, the consistency of the opinion with the record as a whole, and the specialization (if any) of the opinion's source. 20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6).

It is well established that a treating physician's opinion as to the nature and severity of an impairment is given controlling weight. *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (per curiam). However, a treating physician's opinion is not entitled to controlling weight when it is not supported by medically acceptable, clinical, and laboratory diagnostic techniques or is inconsistent with other evidence in the record. *Greek,* 802 F.3d at 375.

The following factors must be considered by the ALJ when deciding how much weight the treating source's opinion should receive, even if the treating source is not given controlling weight: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the opinion is from a specialist." 20 C.F.R. §§ 404.1527(c)(2)(i)-(iv), 416.927(c)(2)(i)-(iv). The ALJ is required to set forth his reasons for the weight he assigns to the treating physician's opinion. *Id.*, *see also* SSR 96-2p, 1996 WL 374188 (July 2, 1996); *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000) (quoting *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir.1998)).

Plaintiff essentially argues the ALJ erred in his RFC determination because he failed to follow the Regulations in assessing the medical opinion evidence in the record and substantial evidence did not support his determination. (Dkt. No. 13 at 11-18 [Pl.'s Mem. of Law].) For ease of analysis Plaintiff's arguments will be addressed out of order and in a consolidated manner.

### i.) Treating Physician Paul Dura, M.D. and Physician Assistant Aspen D'Angelo

The medical record contains numerous treatment records from Dr. Dura and PA D'Angelo, as well as a medical source statement dated August 12, 2013. (T. 317-341, 348-353, 385-386, 411.) In the medical source statement, Dr. Dura stated Plaintiff suffered from RA, osteoarthritis of the feet/bunions, cervical DDD with neuropathy of the left arm. (T. 385.)[3]

---

[3] The medical source statement was signed by both Dr. Dura and PA D'Angelo. For ease, this report and recommendation will refer to Dr. Dura as the author of the medical source statement.

Dr. Dura's medical source statement provided exertional and non-exertional limitations.  Regarding Plaintiff's non-exertional limitations, Dr. Dura indicated that Plaintiff would require more than one ten minute rest period per hour.  (T. 385.)  Dr. Dura opined that if Plaintiff attempted sedentary work she would not have a substantial number of absences from work.  (*Id.*)  Dr. Dura opined that Plaintiff's concentration was mildly impaired due to pain and/or medication and her ability to sustain work pace was moderately impaired due to pain and/or medication.  (*Id.*)[4]  Dr. Dura opined Plaintiff was capable of performing fine motor activity and reaching up to 1/3 of a workday.  (T. 411.)

Regarding Plaintiff's exertional limitations, Dr. Dura opined Plaintiff was capable of sitting approximately six to eight hours out of an eight hour workday.  (T. 386.)  Dr. Dura did not indicate that Plaintiff required the ability to alternate between sitting and standing.  (*Id.*)  Dr. Dura opined Plaintiff could stand/walk for approximately three to four hours out of an eight hours workday.  (*Id.*)  He opined Plaintiff could lift and carry up to five pounds "up to [three] hours per day" and should never lift and carry more than five pounds.  (*Id.*)

First, Plaintiff specifically argues that the ALJ failed to discuss the treating physician rule, failed to explain why he did not afford Dr. Dura's opinion controlling weight, failed to properly assess Dr. Dura's opinion in accordance with the factors in 20 C.F.R. §§ 404.127(c)(2), 416.927(c)(2), and failed to provide "good reason" for the weight afforded to Dr. Dura's opinion.  (Dkt. No. 13 at 13-14 [Pl.'s Mem. of Law].)  Second, Plaintiff argues substantial evidence in the record supported Dr. Dura's

---

[4]        The questionnaire completed by Dr. Dura defined "mild" as "function is slightly impaired creating less than a 20% diminishment in ability to function."  (T. 385.)  The questionnaire defined "moderate" as "creating a limitation of function in this area of 20% or greater but not precluding the function."  (*Id.*)

limitations regarding the amount of weight Plaintiff could lift and carry and Plaintiff's need for rest.  (Dkt. No. 13 at 11-12 [Pl.'s Mem. of Law].)  Third, Plaintiff argues that the ALJ's analysis is internally inconsistent.  (Dkt. No. 13 at 15 [Pl.'s Mem. of Law].)  Each argument will be addressed in turn.

Contrary to Plaintiff's first argument, the ALJ followed the Regulations in affording weight to Dr. Dura's opinion.  The ALJ's decision specifically referenced the Regulations which outline the factors an ALJ must use when weighing medical opinion evidence in the record, including treating sources.  (T. 17.)  Further, where an ALJ's reasoning and adherence to the Regulations is clear, he is not required to explicitly go through each and every factor of the Regulation.  *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) (plaintiff challenged ALJ's failure to review explicitly each factor provided for in 20 C.F.R. § 404.1527(c), the Court held that "no such slavish recitation of each and every factor [was required] where the ALJ's reasoning and adherence to the regulation [was] clear").

Here, the ALJ's adherence to the Regulations was clear.  The ALJ noted Dr. Dura was a specialist in rheumatology, and that he observed and treated Plaintiff on a regular basis.  20 C.F.R. §§  404.1527(c)(2)(i) and (iv), 416.927(c)(2)(i) and (iv).  The ALJ discussed Dr. Dura's clinical findings and treatment notations and analyzed their consistency with Dr. Dura's opinion and the record as a whole.  *Id.* at §§ 404.1527(c)(2), 416.927(c)(2).  Therefore, the ALJ did not commit legal error in failing to adhere to the treating physical regulations.  Further, the reasoning provided by the ALJ in affording weight to Dr. Dura's opinion; such as the statements inconsistency with treatment notations, clinical findings, and activities of daily living, constituted "good reasons."

Second, Plaintiff argues substantial evidence in the record supported Dr. Dura's limitations regarding the amount of weight Plaintiff could lift and carry and Plaintiff's need for rest. (Dkt. No. 13 at 11-12 [Pl.'s Mem. of Law].) Under the substantial evidence standard of review, it is not enough for Plaintiff to argue that the evidence in the record could support her position. Plaintiff must show that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in record. *See Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012). Further, under the substantial evidence standard, the ALJ's findings must be sustained if supported by substantial evidence, even if substantial evidence supported Plaintiff's position. *Wojciechowski v. Colvin,* 967 F. Supp. 2d 602, 605 (N.D.N.Y. 2013) (Commissioner's findings must be sustained if supported by substantial evidence even if substantial evidence supported the plaintiff's position); *see also Jones v. Sullivan,* 949 F.2d 57, 59 (2d Cir.1991) (reviewing courts must afford the Commissioner's determination considerable deference and cannot substitute own judgment even if it might justifiably have reached a different result upon a *de novo* review).

The ALJ afforded Dr. Dura's opinion that Plaintiff could lift and/or carry up to five pounds up to three hours per day "less weight" than other limitations he opined to, reasoning that this particular limitation was not supported by his own treatment notations, other clinical findings, or Plaintiff's reported activities of daily living. (T. 19.)

The ALJ's determination, that Dr. Dura's opinion was not supported, was proper and supported by substantial evidence in the record. Dr. Dura's opinion that Plaintiff could not lift and/or carry more than five pounds was not supported by the evidence in the record. Consultative examiner, Musthaq Sheikh, M.D. opined Plaintiff had a

"moderate limitation" in her ability to lift and carry.  (T. 297.)  Dr. Sheikh's medical examination indicated that Plaintiff had full range of motion in her upper extremities (shoulders, elbows, forearms), and full grip strength.  (T. 296.)

Physical examination reports from Plaintiff' treating providers, including Dr. Dura, indicated that Plaintiff had full range of motion in her upper extremities, often described as "excellent."  On January 5, 2011, Dr. Dura noted Plaintiff's grip strength was "good" bilaterally; her elbows and shoulders moved well; and her hips and knees had good range of motion.  (T. 331.)  On March 25, 2011, Dr. Dura noted Plaintiff had no synovitis of her hands, except for the left wrist; her elbows and shoulders moved well; and her hips, knees, and ankles moved well.  (T. 328.)  On July 11, 2011, Dr. Dura noted Plaintiff's hips and knees moved well.  (T. 327.)  On October 11, 2011, Dr. Dura noted Plaintiff had no synovitis in her fingers, wrists, elbows or shoulders; she had slightly decreased range of movement in her cervical spine; her hips and knees moved well; and her ankles had "fairly good" range of motion.  (T. 326.)

On January 10, 2012, PA D'Angelo noted Plaintiff had "very mild puffiness" of the left wrist; no synovitis of the hands; "excellent" grip strength; her wrists, elbows and shoulders moved well; she had no tenderness along her spine; she had some hip tenderness; she had "excellent" hip flexor, quad and hamstring strength; her abductors and adductors worked quite well without any discomfort; she had "excellent" range of motion of the hips without pain; and her knees and ankles moved well.  (T. 324.)  On May 9, 2012, PA D'Angelo noted Plaintiff had no synovitis in her hands or wrists; she had good grip strength; she had "excellent" cervical mobility; she had no tenderness along her spine; and her ankles, knees, and hips moved well.  (T. 323.)  On September

13, 2012, PA D'Angelo noted Plaintiff's left wrist was tender to palpitation; she had "excellent" shoulder mobility; she had "excellent" cervical mobility; she had no tenderness in her spine; she had no effusions of the knees; and her ankles, knees, and hips moved well. (T. 322.) On December 17, 2012, Dr. Dura noted Plaintiff's elbows moved well; the left wrist was swollen with decreased range of motion; the range of motion in her fingers was otherwise normal and her grip strength was good bilaterally; her hips moved well; her knees moved well; and her ankles had "fairly good" range of motion. (T. 320.)

On February 14, 2013, neurologist Saeed Bajwa, M.D., noted Plaintiff had no sensory loss; no motor weakness; intact balance and gait; and full reflexes. (T. 356.) On April 11, 2013, PA D'Angelo noted on examination that Plaintiff's elbows and shoulders moved well; there was tenderness in her left trapezius ridge; and her ankles, knees and hips moved well. (T. 318.) On April 18, 2013, Plaintiff presented to her primary care physician with complaints of should pain due to injury. (T. 368.) Plaintiff reported that her car was stuck and she was pushing it from behind when she slipped and her arm got caught on a bumper. (*Id.*)

On June 26, 2013, PA D'Angelo noted Plaintiff had good grip strength; her wrists, elbows and shoulders moved well; and she had no tenderness along her spine. (T. 349.) On July 25, 2013, Dr. Bajwa observed that Plaintiff walked without a limp; she had significant muscle spasms on the left medial scapular region; her cervical spine range of motion was "mildly restricted;" however, she had no gross weakness in her upper extremities. (T. 358.) Therefore, substantial evidence supported the ALJ's determination to afford Dr. Dura's weight limitation "less weight" because the objective

medical evidence in the record, as outline above, failed to support such extreme limitations.

Plaintiff also argues the ALJ failed to provide substantial evidence contrary to Dr. Dura's specific weight limitations. (Dkt. No. 13 at 13-14 [Pl.'s Mem. of Law].) Essentially, Plaintiff argues that Dr. Sheikh's opinion that Plaintiff had "moderate" limitations in her ability to lift and carry cannot constitute substantial evidence to support the ALJ's determination that Plaintiff could lift and/or carry up to ten pounds occasionally. (*Id.* at 14.) Plaintiff relies on *Curry v. Apfel,* 209 F.3d 117, 123 (2d Cir. 2000) in support of her argument.

To be sure, a consultative examiner's report which concludes that a plaintiff's condition is "mild" or "moderate," without additional information, does not allow an ALJ to infer that a plaintiff is capable of performing the exertional requirements of work. *See Curry v. Apfel,* 209 F.3d 117, 123 (2d Cir. 2000), *superseded by statute on other grounds; see Selian v. Astrue,* 708 F.3d 409, 421 (2d Cir. 2013) (consultative examiner's opinion was "remarkably vague" and meaning was left to the ALJ's "sheer speculation"); *see Carrube v. Astrue,* No. 3:08-CV-0830, 2009 WL 6527504, at *8 (N.D.N.Y. Dec. 2, 2009) (remanding where consultative examiner's opinion on claimant's ability to lift weight, was so vague that the court "cannot fathom what might support the ALJ's conclusion that Plaintiff could lift and carry twenty-five to fifty pounds"), *report and recommendation adopted by,* 2010 WL 2178499 (N.D.N.Y. May 28, 2010). Additionally, the "use of imprecise and nebulous terms regarding functional limitations raises a red flag." *Anderson v. Colvin*, No. 5:12-CV-1008, 2013 WL 5939665, at *9 (N.D.N.Y. Nov. 5, 2013).

Although a consultative examiner's opinion may use terminology that, on its face, is vague, such language does not render the consultative examiner's opinion useless in all situations. *Zongos v. Colvin*, No. 5:12-CV-1007, 2014 WL 788791, at *10 (N.D.N.Y. Feb. 25, 2014) ("[W]hether an [ALJ's] reliance on a consultative examiner's vague opinion is reversible error is contextual rather than *per se*. Reviewing courts must weigh the impart of vague opinion in its unique factual circumstance."). Courts have held that terms such as "mild" and "moderate" pass substantial evidence muster when medical evidence shows relatively little physical impairment. *Waldau v. Astrue,* No. 5:11-CV-925, 2012 WL 6681262, at *4 (N.D.N.Y. Dec.21, 2003); *Walker v. Astrue,* No. 08-CV-0828, 2010 WL 2629832, at *7 (W.D.N.Y. June 11, 2010) (finding that where the medical evidence shows relatively little physical impairment, an ALJ permissibly can render a common sense judgment about functional capacity even without a physician's assessment); *see Tolhurst v. Comm'r of Soc. Sec.*, No. 5:15-CV-0428, 2016 WL 2347910, at *5 (N.D.N.Y. May 4, 2016) (holding that a consultative examiner's opinion was too vague to support a finding that plaintiff could perform sedentary work because the ALJ determined, at step two, that plaintiff suffered from back disorders, knee disorders, and Factor V Leiden; and therefore, plaintiff did not have relatively little physical impairments).

Further, courts have held that a consultative examiner's conclusion was not impermissibly vague where the conclusion was "well supported by his extensive examination." *Waldau*, 2012 WL 6681262, at *4; *Mauzy v. Colvin*, No. 5:12-CV-866, 2014 WL 582246, at *9 (N.D.N.Y. Feb. 13, 2014). Courts have also held that medical source statements from consultative examiners which provide vague language may be

rendered "more concrete" by the facts in the underlying opinion and other opinion evidence in the record. *Davis v. Massanari*, No. 00-CV-4330, 2001 WL 1524495, at *8 (S.D.N.Y. Nov. 29, 2001) (a consultative examiner's opinion was not too vague where "the facts underlying that opinion and the other medical opinions in the record lend it a more concrete meaning"); *see Sweeting v. Colvin,* No. 12-CV-0917, 2013 WL 5652501, at *8 (N.D.N.Y. Oct. 15, 2013) (plaintiff's contention that consultative examiner's use of the term "moderate" in his opinion was vague lacked merit as consultative examiner made specific findings based on physical examination of plaintiff); *Melton v. Colvin*, No. 13-CV-6188, 2014 WL 1686827, at *13 (W.D.N.Y. Apr. 29, 2014) (substantial evidence supported ALJ's RFC determination that plaintiff could perform sedentary work were consultative examiner opined plaintiff had moderate limitations in lifting and carrying and other objective evidence in the record to supported this determination).

Here, Dr. Sheikh's opinion was not impermissibly vague because he made specific findings on his physical examination and his limitation was supported by other objective evidence in the record. Further, for the reasons discussed below, the ALJ's determination, that Plaintiff could lift up to ten pounds occasionally, was supported by other medical evidence in the record.

In making his determination that Plaintiff could lift and carry up to ten pounds occasionally, the ALJ considered Dr. Dura's opinion along with Dr. Sheikh's opinion, the objective medical evidence in the record, and Plaintiff's reported activities of daily living. The ALJ's decision thoroughly outlined the objective medical evidence in the record regarding Plaintiff's arthritis, her hip replacement, and neurological examinations. (T. 18.) As outlined in detail herein, the record consistently reported that Plaintiff had full

range of motion in her upper extremities, no motor weakness or sensory loss, and good grip strength. (T. 318, 319, 320, 322, 323, 324, 326, 327, 328, 331, 332, 349, 353, 356, 358.) The ALJ properly concluded that such objective medical evidence did not support greater lifting limitations than he imposed. (T.19-20.) The ALJ also relied Plaintiff's reported activities of daily living indicated she was capable of performing the minimal lifting and carrying requirements of at least sedentary work. (T. 20.)

This is not a case of the ALJ impermissibly interpreting raw medical data and substituting his own lay opinion for that of a medical source. Here, the ALJ properly resolved conflicts in the medical record. *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) ("Genuine conflicts in the medical evidence are for the Commissioner to resolve."). Where there is a genuine conflict in the medical evidence we must defer to the ALJ's resolution of that conflict. *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012) ("In our review, we defer to the Commissioner's resolution of conflicting evidence.").

The ALJ also afforded Dr. Dura's opinion that Plaintiff required "more than one [ten] minute rest period per hour" less weight. (T. 19.) Again the ALJ reasoned that this limitations was not supported by Dr. Dura's own treatment notations, other clinical findings, and Plaintiff's reported activities of daily living. (*Id.*) In support of her argument, Plaintiff asserts that the record supported a rest requirement. (Dkt. No. 13 at 12-13 [Pl.'s Mem. of Law].) Plaintiff cites to her own subjective report that she cannot be active for more than twenty minutes at a time. (*Id.* at 12, *referring to* T. 372.) This one notations of a subjective complaint is not enough to overcome the substantial evidence which supported the ALJ's determination. Further, as discussed in Part IV.C,

the ALJ properly concluded that Plaintiff's subjective complaints were not entirely credible.

Third, Plaintiff argues that the ALJ's RFC analysis is internally inconsistent because the ALJ afforded Dr. Dura's opinion that Plaintiff's ability to lift "less weight" and his opinion concerning Plaintiff's ability to use her arms and hands "great weight." (Dkt. No. 13 at 15 [Pl.'s Mem. of Law].) However, as Defendant argues in her brief, there is no inconsistency because Dr. Dura's opinion regarding Plaintiff's use of hands and arms related to her ability to do fine motor activity and reach, activities which differ from lifting and carrying. (Dkt. No. 17 at 11-12 [Def.'s Mem. of Law].) Although the ability to lift and carry naturally requires the use of arms and hands, a plaintiff may have the ability to lift and carry and yet have additional limitations in her ability to use her arms and hands for fine motor activity and reaching. As outlined in SSR 85-15: "[r]eaching, handling, fingering, and feeling require progressively finer usage of the upper extremities to perform work-related activities." Sedentary work often requires manipulative skills, "fine movements of small objects require use of the fingers; e.g., to pick or pinch." SSR 96-9p. As the ALJ expressed in his determination, Plaintiff's treatment records indicated that although she had good strength in her upper extremities, she had "some minimal swelling and tenderness in her hands and limited range of motion in her left wrist." (T. 19.) Therefore, the ALJ's determination to afford part of Dr. Dura's opinion greater weight than another portion was not internally inconsistent.

### ii.) Dr. Harry Werner, D.O.

In a letter dated June 15, 2012, Dr. Werner stated that Plaintiff was "unable to work due to an increase in her symptoms of pain recently. I recommend she stay out of

work for the next three months as her rheumatologist attempts to improve her arthritis symptoms." (T. 265.)[5] The ALJ afforded "no weight" to the opinion of Dr. Werner. (T. 20.)

Plaintiff argues the ALJ erred in affording Dr. Werner's opinion no weight and that the ALJ should have re-contacted Dr. Werner for a function-by-function analysis. (Dkt. No. 13 at 15-16 [Pl.'s Mem. of Law].)

First, the ALJ did not commit legal error in affording Dr. Werner's statements "no weight" because an opinion that a plaintiff is disabled is an issue reserved to the ALJ. 20 C.F.R. §§ 404.1527(d), 416.927(d). "That means that the Social Security Administration considers the data that physicians provide but draws its own conclusions as to whether those data indicate disability. A treating physician's statement that the claimant is disabled cannot itself be determinative." *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999); *Taylor v. Barnhart*, 83 F. App'x 347, 349 (2d Cir. 2003) ("Dr. Desai's opinion that Taylor was 'temporarily totally disabled' is not entitled to any weight, since the ultimate issue of disability is reserved for the Commissioner. Accordingly, we find no error in the ALJ's decision not to accord controlling weight to Dr. Desai's opinion.") (internal citations omitted); *Barringer v. Comm'r of Soc. Sec.*, 358 F. Supp. 2d 67, 80 (N.D.N.Y. 2005) (ALJ did not err in his decision not to accord treating physician's opinion plaintiff was totally disabled controlling weight). Therefore, the ALJ did not err in affording the determinations of Dr. Werner no weight, because a doctor's opinion regarding the disability of a plaintiff is not binding on the ALJ.

---

[5]     Of note, Dr. Werner's June 15, 2012 letter stated Plaintiff was unable to work for the "next three months." (T. 265.) On September 13, 2012, Dr. Werner completed a disability form for New York State and opined that Plaintiff could return to work on January 1, 2013. (T. 264.) Therefore, although his statement was far from a function-by-function analysis, Dr. Werner ultimately opined that Plaintiff was capable of returning to some form of work.

Second, the ALJ was not obligated to re-contact Dr. Werner. To be sure, the ALJ is under an affirmative duty to "make every reasonable effort" to develop the record. 20 C.F.R. §§ 404.1512(d), 416.912(d). Moreover, an ALJ has an independent duty to make reasonable efforts to obtain a report prepared by a plaintiff's treating physician, including an assessment of the plaintiff's functional capacity, in order to afford the claimant a full and fair hearing. *See Smith v. Astrue*, 896 F. Supp. 2d. 163, 176 (N.D.N.Y. 2012) (citing 20 C.F.R. § 404.1512(e); *Devora v. Barnhart*, 205 F. Supp. 2d 164, 174 (S.D.N.Y. 2002) (collecting cases); *Hardhardt v. Astrue*, No. 05–CV–2229, 2008 WL 2244995, at *9 (E.D.N.Y. May 29, 2008)). However here, the record was adequate to determine whether or not Plaintiff was disabled. *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996). The record contained substantial treatment notations from Dr. Dura, including a medical source statement, treatment notations from Dr. Werner, treatment notations from Dr. Bajwa, and examination reports and medical source statements from consultative examiners.

In sum, the ALJ's physical RFC determination was supported by substantial evidence. The ALJ relied on the medical source opinion of Dr. Dura, the opinion of consultative examiner Dr. Sheikh, and objective medical evidence in the record which was consistent with the exertional demands of sedentary work. Therefore, for the reasons stated herein, and further outlined in Defendant's brief, the ALJ's physical RFC determination was supported by substantial evidence.[6]

## C.    Credibility Determination

---

[6]    Plaintiff does not argue the ALJ erred in his mental RFC determination. Plaintiff's brief only addressed her mental limitations in the context of the ALJ's step two severity determination. However, a review of the ALJ's decision indicated that the ALJ properly relied on the opinions of the State agency medical examiners in making a mental RFC determination. (T. 20.)

A plaintiff's allegations of pain and functional limitations are "entitled to great weight where ... it is supported by objective medical evidence." *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 270 (N.D.N.Y. 2009) (quoting *Simmons v. U.S. R.R. Ret. Bd.*, 982 F.2d 49, 56 (2d Cir.1992)). However, the ALJ "is not required to accept [a plaintiff's] subjective complaints without question; he may exercise discretion in weighing the credibility of the [plaintiff's] testimony in light of the other evidence in the record." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (citing *Marcus v. Califano,* 615 F.2d 23, 27 (2d Cir.1979)). "When rejecting subjective complaints, an ALJ must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." *Rockwood*, 614 F. Supp. 2d at 270.

The ALJ must employ a two-step analysis to evaluate a plaintiff's reported symptoms. *See* 20 C.F.R. §§ 404.1529, 416.929; SSR 96–7p. First, the ALJ must determine whether, based on the objective medical evidence, a plaintiff's medical impairments "could reasonably be expected to produce the pain or other symptoms alleged." 20 C.F.R. §§ 404.1529(a), 416.929(a); SSR 96–7p. Second, if the medical evidence establishes the existence of such impairments, the ALJ must evaluate the intensity, persistence, and limiting effects of those symptoms to determine the extent to which the symptoms limit the claimant's ability to do work. *See id.*

At this second step, the ALJ must consider: (1) the plaintiff's daily activities; (2) the location, duration, frequency, and intensity of the plaintiff's pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication the plaintiff takes or has taken to relieve her pain or other symptoms; (5) other treatment the plaintiff receives or has received to relieve her pain

or other symptoms; (6) any measures that the plaintiff takes or has taken to relieve her pain or other symptoms; and (7) any other factors concerning plaintiff's functional limitations and restrictions due to her pain or other symptoms.  20 C.F.R. §§ 404.1529(c)(3)(i)-(vii), 416.929(c)(3)(i)-(vii); SSR 96-7p.

The ALJ determined that although Plaintiff's medically determinable impairments could reasonably be expected to cause her symptoms, her statements concerning the intensity, persistence and limiting effects of those symptoms were not entirely credible. (T. 18.)  In making his credibility determination the ALJ relied on objective medical evidence (such as examinations, treatment notations and treatment recommendations) in the record regarding her arthritis, her hip impairment, her neck impairment and her mental impairment.  (T. 18-19.)  The ALJ also discussed Plaintiff's testimony (T. 17) and her activities of daily living (T. 15, 19).  Further, the ALJ determined that Plaintiff's work history enhanced her credibility.  (T. 19.)

First, Plaintiff argues the ALJ erred in his credibility analysis because he impermissibly relied on Dr. Dura's statements that Plaintiff's arthritis was "stable."  (Dkt. No. 13 at 9 [Pl.'s Mem. of Law].)  Plaintiff contends that the ALJ misunderstood the word stable to equate "doing well."  (*Id*. at 9.)  To be sure, the term stable, as Plaintiff asserts, merely indicates that a condition was not changing or fluctuating.  (*Id*. at 9.)  Therefore, the term must be read in the context of the medical record.

Here, the ALJ properly interpreted the meaning of stable in the context of the medical records.  For example, the ALJ specifically cited to treatment records dated January 2012 in which PA D'Angelo noted Plaintiff's RA remained stable despite some increased pain and swelling in her left wrist.  (T. 18, *referring to* T. 324.)  Notations from

that date specifically state that her RA was "doing quite well." (T. 324.) In May of 2012, PA D'Angelo again stated Plaintiff's RA was "doing quite well." (T. 323.) The ALJ also referred to a September 2012 notation which indicated Plaintiff had RA with "deformity of the left wrist, but otherwise very stable." (T. 323.) When taken in context, the ALJ properly concluded that Plaintiff's RA was stable indicating that her RA was "doing quite well" and not worsening.

Plaintiff further argues Dr. Bajwa's reports support her credibility and the ALJ mischaracterized Plaintiff's activities of daily living. (Dkt. No. 13 at 9-10 [Pl.'s Mem. of Law].) Plaintiff argues Dr. Bajwa's findings, that Plaintiff's thecal sac and compression upon the exiting nerve root, "can, and does, cause Plaintiff's severe symptoms." (*Id.* at 10.) However, the ALJ did exactly what Plaintiff contends he failed to do. The ALJ did determine that Plaintiff's impairments, such as her cervical impairment, could reasonably cause her symptoms; however, the ALJ ultimately concluded the effects of those symptoms were not entirely credible. (T. 18.)

Under the substantial evidence standard of review, it is not enough for Plaintiff to merely disagree with the ALJ's weighing of the evidence or to argue that the evidence in the record could support her position. Plaintiff must show that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in record. *See Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); *see also Wojciechowski v. Colvin,* 967 F.Supp.2d 602, 605 (N.D.N.Y. 2013) (Commissioner's findings must be sustained if supported by substantial evidence even if substantial evidence supported the plaintiff's position); *see also Jones v. Sullivan,* 949 F.2d 57, 59 (2d Cir.1991) (reviewing courts must afford the Commissioner's determination considerable deference

and cannot substitute own judgment even if it might justifiably have reached a different result upon a *de novo* review).

Further, the ALJ properly assessed Plaintiff's activities of daily living. (T. 15, 19.) Plaintiff appears to argue that her activities of daily living, as reported to the psychiatric examiner, cannot be used to support physical abilities because Plaintiff was simply indicating that her psychiatric conditions do not impede her ability to perform such activities. (Dkt. No. 13 at 10 [Pl.'s Mem. of Law].) However, Plaintiff reported to the psychiatric examiner that she could dress, bath, groom herself, cook and prepare food, complete general cleaning and laundry, shop independently, drive, go camping and read. (T. 276.) She reported to Dr. Sheikh she was able to cook, but could not stand too long; clean and do laundry with her children's help; shower; bath; dress; watch TV; listen to the radio; and read. (T. 294.) The ALJ properly considered Plaintiff's reports of her activities of daily living in his overall credibility analysis. "The issue is not whether Plaintiff's limited ability to undertake normal daily activities demonstrates her ability to work. Rather, the issue is whether the ALJ properly discounted Plaintiff's testimony regarding her symptoms to the extent that it is inconsistent with other evidence." *Morris v. Comm'r of Soc. Sec.,* No. 5:12-CV-1795, 2014 WL 1451996, at *8 (N.D.N.Y. Apr. 14, 2014).

For the reasons stated herein, and further outlined in Defendant's brief, the ALJ's properly evaluated Plaintiff's credibility and it is recommended that his credibility determination be upheld.

**D.     Step Five Determination**

At step five of the sequential process, the burden shifts to the Commissioner to determine whether Plaintiff was able to do any other work considering her RFC, age, education, and work experience.  20 C.F.R. §§ 404.1520(g), 416.920(g).  In order to find support that Plaintiff was not disabled at step five, the Commissioner was responsible for providing evidence that demonstrated that other work exists in the national economy that Plaintiff could do.  *Id.* at §§ 404.1512(f), 416.912(f).  "Other work" must exist in "significant numbers in the national economy (either in the region where [Plaintiff] live[s] or in several regions in the country)."  *Id.* at §§ 404.1560(c)(1)-(2), 404.1566, 416.960(c)(1)-(2), 416.966.

First, for the reasons stated herein, the ALJ did not err in his RFC assessment, therefore the ALJ did not err in posing a hypothetical question to the vocational expert ("VE") that was based on that assessment.  *See Dumas v. Schweiker,* 712 F.2d 1545, 1553–54 (2d Cir.1983) (approving a hypothetical question to a vocational expert that was based on substantial evidence in the record).

Second, the VE testified based on the ALJ's hypothetical, which ultimately became his RFC determination, that a person with Plaintiff's age, education and work experience, could perform the occupations of information clerk (DOT 237.367-022), telemarketer (DOT 299.357-014), and call out operator (DOT 237.367-014).  (T. 70.) The ALJ determined that Plaintiff could perform "the requirements of representative occupations such as call out operator" which the VE testified had 8,404 jobs available nationally.  (T. 21.)

Plaintiff argues that "even assuming that no other errors were made by ALJ . . . [he] clearly erred in finding that 8,404 jobs nationally constituted a significant number." (Dkt. No. 13 at 18-19 [Pl.'s Mem. of Law].)

Defendant argues that although the ALJ did not mention the occupations of information clerk, which had 95,539 jobs nationally, the VE testified that Plaintiff could perform that position and therefore between those occupations there would be a significant number of jobs Plaintiff could perform. (Dkt. No. 17 at 17 [Def.'s Mem. of Law].)

Neither the Regulations nor the Social Security Rulings define "significant number." *Koutrakos v. Colvin,* No. 3:13-CV-1290, 2015 WL 1190100, at *20–22 (D.Conn. Mar. 16, 2015). Courts have held that a "significant number" of jobs is "fairly minimal." *Hamilton v. Comm'r of Soc. Sec.*, 105 F. Supp. 3d 223, 229 (N.D.N.Y. 2015) (citing *Rosa v. Colvin*, No. 12-CV-0170, 2013 WL 1292145, at *9 (N.D.N.Y. March 27, 2013)).

Courts have held that numbers varying from 9,000 upwards constituted "significant." *See Hoffman v. Asture*, No. 09-CV-5252, 2010 WL 1138340, at *15 (W.D.Wash. Feb. 8, 2010) (9,000 jobs in the national economy was found significant) (*citing Johnson v. Chater*, 108 F.3d 178, 180 (8th Cir. 1997) (10,000 jobs in the national economy was found significant)).

Courts have held that numbers around between 4,000 and 5,000 did not constitute "significant." In *Leonard v. Heckler,* 582 F.Supp. 389, 391 (M.D.Pa.1983), the court held that 4,000 to 5,000 jobs nationwide was not a significant number, given that it was "a minuscule fraction of the number of jobs existing in the national economy." In

*Beltran v. Astrue,* 700 F.3d 386, 389-90 (9th Cir. 2012), the court found that 135 regional jobs and 1,680 national jobs was not significant.  The court specifically stated that "[a]lthough 1,680 jobs might seem a 'significant number' standing alone, distributing these jobs between several regions across the nation shows that it is not 'significant' after all."  In *Hamilton*, the court held that 5,160 jobs nationally was not a "significant" number and remanded for the express purpose of determining whether there were significant numbers of jobs that plaintiff could perform.  *Hamilton,*105 F. Supp. 3d at 229.  Although courts have "refused to draw a bright line standard for the minimum number of jobs required to show that work exists in significant numbers," it appears that courts are moving in that direction.  *Gurule v. Astrue*, No. 2:11-CV-96, 2012 WL 1609691, at *4 (D. Vt. May 8, 2012).  This court is hesitant to draw a bright line; however, remand is nonetheless recommended to clarify the VE's testimony.

First, whether the ALJ limited Plaintiff to unskilled work, or if the ALJ determined Plaintiff had additional transferable skills, should be clarified on remand.  This clarification is essential.  If Plaintiff had transferable skills, then there would be a substantial number of jobs in the national economy Plaintiff could perform based on the VE's testimony.  (T. 70.)[7]  A limitation to unskilled work, without transferable skills, would eliminate the occupations of information clerk and telemarketer because those occupations were classified as semi-skilled.  (T. 70)

The ALJ's decision is unclear as to whether the Plaintiff acquired skills from her past job experience which could be transferred and thus enhance her RFC.  *See* SSR 83-10 (S.S.A. 1983) ("The [occupational] base may be enhanced by the addition of

---

[7]        The VE testified the national employment numbers for telemarketer were 168,640; for call out operator were 8,404; and for information clerk were 96,539.  (T. 70.)  A total of 273,583 jobs nationally constitutes a significant number.

specific skilled or semiskilled occupations that an individual can perform by reason of his or her education or work experience."); *see* SSR 82-41 (S.S.A. 1982).

The ALJ's RFC determination did not specifically limit Plaintiff to unskilled work (T. 17); however, the ALJ stated in his step five determination that he called on the testimony of a VE "[t]o determine the extent to which [Plaintiff's non-exertional] limitations erode the unskilled sedentary occupational base." (T. 21.) At the hearing, the ALJ asked the VE if she was able to identify "primarily unskilled work or if you have jobs that would utilize past acquired [skills]." (T. 69.)[8] The VE testified that Plaintiff could perform the occupations of information clerk (semi-skilled), telemarketer (semi-skilled), and call out operator (unskilled). (T. 70.)

The ALJ's determination does state that transferability of skills was not material because using the Medical-Vocational Rules ("the Grids") as a framework would support a finding that Plaintiff is not disabled whether or not she had transferable job skills. (T. 21.) However, the ALJ determined that the Grids were not applicable here because Plaintiff's RFC was for less than a full range of sedentary work and VE testimony was necessary. (*Id.*) Although transferability may not have altered a determination under the Grids; whether or not Plaintiff had transferable skills did play a role in the VE testimony. Two of the three occupations the VE provided were semi-skilled occupations which Plaintiff would only be able to perform if she had acquired transferable skills. (T. 70.) In sum, remand is recommended for clarification of whether Plaintiff is limited to unskilled work or if Plaintiff acquired transferable skills from her past work.

---

[8]    The VE testified that Plaintiff had past relevant work as an accounts payable clerk (DOT 216.482-010) which is classified as skilled work; as a server (DOT 311.477-030) which is classified as semi-skilled work; and as a credit clerk (DOT 205.367-022) which is classified as semi-skilled work. (T. 68.) Plaintiff did not object to these classifications at the hearing. Further, Plaintiff does not argue in his brief that the VE erred in her classification of Plaintiff's past relevant work.

Second, if the ALJ determined Plaintiff did not have transferable skills and was thus limited to unskilled work, the ALJ's step five determination was not supported by substantial evidence because the VE's testimony failed to provide enough information to make a determination if a significant number of jobs exist which Plaintiff could perform. The VE testified that there was one unskilled job available which Plaintiff could perform; however, there was no direct testimony that the job was the only unskilled job she could perform. *Hamilton*, 105 F. Supp. 3d at 232. Further, under the Regulations, a significant number of jobs may exist in the national or regional economy. 20 C.F.R. §§ 404.1566, 416.966. The VE testified to the number of jobs in the national economy; however, the VE did not provide numbers for the regional economy. (T. 70.)[9] Remand is recommended because the VE's testimony was not definitive that Plaintiff could perform only one unskilled job with 8,404 positions nationally and because the VE never provided state-wide numbers. *See Hamilton*, 105 F. Supp. 3d. at 232.

In addition, the ALJ's decision refers to the occupation of call out operator as a "representative occupation." (T. 21.) It is not clear what the ALJ intended by referring to a call out operator as a "representative" occupation. For example, the ALJ may have referred to this one occupation as representative of the three occupations the VE testified Plaintiff could perform or that it was representative of other unskilled work Plaintiff could perform. However, the ALJ's decision is not clear what level of work Plaintiff could perform and remand is recommended for clarification.

---

[9] To be sure, an ALJ need only rely on the number of jobs in the national economy. *Colon v. Comm'r of Soc. Sec.*, No. 6:00-CV-0556, 2004 WL 1144059, at *8 (N.D.N.Y. Mar. 22, 2004) (ALJ may properly rely only on significant number of jobs available in the national economy). While regional numbers may be insufficient, this court cannot make that assumption.

Therefore, this court recommends reversal of the Commissioner's decision and a remand to the agency for further administrative proceedings.[10]  To be clear, this court is recommending remand because it is uncertain from the evidence in the record if the ALJ's step five determination is supported by substantial evidence.  This recommendation should not be read as a determination that the number 8,404 does, or does not, constitute a significant number of jobs.

ACCORDINGLY, based on the findings above, it is

RECOMMENDED, that the Plaintiff's motion for judgment on the pleadings be GRANTED in PART and DENIED in PART, and the Commissioner's determination be GRANTED in PART and DENIED in PART, and the matter be REMANDED for further proceedings under sentence four of 42 U.S.C. § 405(g) and consistent with this report.

Pursuant to 28 U.S.C. § 636 (b)(1) and Local Rule 72.1(c), the parties have FOURTEEN (14) DAYS within which to file written objections to the foregoing report.  Any objections shall be filed with the Clerk of the Court.  FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Secretary of Health and Human Services, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated:  June 29, 2016

William B. Mitchell Carter
U.S. Magistrate Judge

---

[10]     Plaintiff requests remand for calculations of benefits (Dkt. No. 13 at 20 [Pl.'s Mem. of Law].); however, remand for further proceedings is recommended because the record does not provide "persuasive proof" that Plaintiff was disabled.  Parker v. Harris, 626 F.2d 225, 235 (2d Cir. 1980).